# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SELECT SPECIALTY HOSPITALS, INC., D/B/A SELECT SPECIALTY HOSPITAL—BIRMINGHAM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ALEX M. AZAR II, Secretary U.S. Department of Health and Human Services,<br><br>Defendant. | Civil Action No. 19-2591 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

On August 27, 2019, plaintiffs, 48 long-term care hospitals ("LTCHs") who participate in Medicare, filed this suit challenging a June 26, 2019 decision of the Provider Reimbursement Review Board ("PRRB" or "Board"). *See* Compl. ¶ 7, ECF No. 1. On August 29, 2019, the Administrator of the Centers for Medicare and Medicaid Services ("CMS") vacated the PRRB's June 2019 decision and remanded the matter to the PRRB "for further development of the record." Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n"), ECF 21, Ex. C, Decl. of Jason M. Healy, Ex. 1, CMS Administrator Decision at 28, ECF No. 21-3. Defendant moved to dismiss this action under Federal Rule of Civil Procedure 12(b)(1) on the ground that, given Administrator's vacatur and remand, the June 2019 PRRB decision is not final, *see* Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 19, and federal courts have jurisdiction to review only "final decision[s] of the Board," 42 U.S.C. § 1395oo(f)(1). According to plaintiffs, though, the Administrator's decision was untimely, making the June 2019 PRRB decision a reviewable, final decision. *See* Pls.' Opp'n at 6. Under the governing statute and regulation, the Administrator's

decision was timely, the June 2019 PRRB decision is not final, and subject matter jurisdiction is lacking. The defendant's motion is thus granted, and this action is dismissed.[1]

## I. BACKGROUND

A brief statutory and regulatory overview precedes a comprehensive procedural history.

### A. Statutory and Regulatory Background

#### 1. The Medicare Program and Reimbursement for Bad Debts

The Medicare program provides health insurance to "nearly 60 million aged or disabled Americans." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1808 (2019). CMS, an operating component of the Department of Health and Human Services ("HHS"), is charged with Medicare's administration. The Medicare statute provides that the Secretary of HHS's ("the Secretary's") regulations must not result in the costs of Medicare-covered services being shifted to non-Medicare patients. *See* 42 U.S.C. § 1395x(v)(1)(A). Given this prohibition on cost-shifting, Medicare will reimburse providers, including LTCHs, for unpaid patient obligations, or bad debts, when certain criteria are met. *See* 42 C.F.R. § 413.89(e). When the patient associated with a bad debt is dual-eligible — that is, eligible for both Medicare and Medicaid — the provider often must "determine that Medicaid is not 'legally responsible' for . . . [the] patient's medical bills before seeking reimbursement from Medicare." *Select Specialty Hospital—Denver, Inc. v. Azar*, 391 F. Supp. 3d 53, 58 (D.D.C. 2019) (quoting Provider

---

[1] Plaintiffs also moved to strike from defendant's answer the first affirmative defense — about subject matter jurisdiction over the PRRB's June 2019 decision — and the second affirmative defense — that the complaint fails to state a claim on which relief can be granted. *See* Pls.' Mot. to Strike, ECF No. 14; *see also* Def.'s Opp'n to Pls.' Mot. to Strike, ECF No. 18; Pls.' Reply in Supp. Mot. to Strike, ECF No. 20. "[M]otions to strike, as a general rule, are disfavored," *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distribs. Pty. Ltd.*, 647 F.2d 200, 201 (D.C. Cir. 1981) (per curiam), and may be granted only for insufficiency, redundancy, immateriality, impertinence or scandalousness, *see* FED. R. CIV. P. 12(f). A ruling on a motion to strike is within the district court's discretion. *See LaRouche v. Dep't of the Treasury*, No. 91-cv-1655 (RCL), 2000 WL 805214, at *13 (D.D.C. Mar. 31, 2000) (citing MOORE'S FED. PRACTICE § 12.37). As this decision granting the defendant's motion to dismiss for lack of subject matter jurisdiction shows, the first affirmative defense meets none of the criteria that warrant striking. Thus, the motion to strike is DENIED as to that defense. As to the second affirmative defense, the motion to strike is DENIED as moot.

Reimbursement Manual, Part I § 312). The reimbursements at issue here are for claims of bad debts of dual-eligible patients on plaintiffs' cost reports for periods ending in fiscal year 2011. *See* Compl. ¶ 8.

### 2. Administrative and Judicial Review of Decisions of the PRRB

During the time at issue, CMS contracted with private insurance companies, termed Medicare Administrative Contractors ("contractors"), to review providers' cost reports and to determine the amount of allowable Medicare payments. *See* 42 U.S.C. § 1395kk-1(a)(4); *see also* 42 C.F.R. § 405.1803. A provider may appeal a decision of its contractor to the PRRB, an administrative board within HHS tasked with resolving Medicare reimbursement disputes. *See* 42 U.S.C. § 1395oo(a).

Under 42 U.S.C. § 1395oo(f)(1), a decision of the PRRB is "final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision, reverses, affirms, or modifies the Board's decision." A CMS regulation defines "notice" of the PRRB's decision as "date of receipt," *see* 42 C.F.R. § 405.1801(a), and provides that "[t]he date of receipt . . . is presumed to be 5 days after the date of issuance of . . . a reviewing entity document," *id.* § 405.1801(a) (defining "[d]ate of receipt"). "This presumption, which is otherwise conclusive," the regulation continues, "may be overcome if it is established by a preponderance of the evidence that such materials were actually received on a later date." *Id.*

The Secretary has delegated the authority to review PRRB decisions to the CMS Administrator, *see* 42 C.F.R. § 405.1875(a), who may "affirm[], reverse[], or modif[y] the Board's decision, or vacate[] that decision and remand[] the case to the Board for further proceedings." *Id.* § 405.1875(e)(1)(i).

Finally, "[p]roviders shall have the right to obtain judicial review of any final decision of the Board, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days of the date on which notice of any final decision by the Board or of any reversal, affirmance, or modification by the Secretary is received." 42 U.S.C. § 1395oo(f)(1).

**B.     Procedural History**

Plaintiffs claimed bad debts of dual-eligible beneficiaries on their Medicare cost reports for the period ending in fiscal year 2011, and the contractor denied those claims. *See* Compl. ¶ 7. Plaintiffs appealed to the PRRB, which held a hearing and then issued its decision, on June 26, 2019. *Id.* ¶ 94. The PRRB concluded that the contractor had properly denied bad debt claims for providers in states where LTCHs were eligible to enroll as state Medicaid providers but declined to enroll. *See* Compl., Ex. A, *Select Medical 2011 Dual Eligible Medicare Bad Debts CIRP Group*, PRRB Dec. No. 2019-D29 ("PRRB Decision") at 2, ECF No. 1-1.[2] The PRRB reversed the contractor's denial of bad debt claims by providers in states where LTCHs were ineligible to enroll as state Medicaid providers. *Id.*[3]

On July 26, 2019, CMS's Office of the Attorney Advisor notified plaintiffs that the CMS Administrator would review the PRRB decision. Compl. ¶ 98. "On August 12, 2019, the Plaintiffs submitted a letter to the Office of the Attorney Advisor" requesting that the Administrator reverse the part of the PRRB decision that affirmed the contractor's denials. *Id.*

Plaintiffs then filed this suit on August 27, 2019. *See* Compl. Their complaint alleged:

> 99.    As of the date of filing this Complaint, the CMS Administrator has not issued a decision. Since it has been more than

---

[2]     These states are Arkansas, California, Colorado, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Michigan, Mississippi (except for Harrison County), North Carolina, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Virginia, and West Virginia. *See* PRRB Decision at 2.
[3]     These states are Alabama, Delaware, Mississippi (Harrison County), New Jersey, and Pennsylvania. *See* PRRB Decision at 2.

4

> 60 days since the Plaintiffs received the PRRB decision on June 26, 2019, the Administrator's "inaction constitutes an affirmation of the Board's decision by the Administrator, for purposes of the time in which to seek judicial review." 42 C.F.R. § 405.1877(b)(4) (judicial review must be requested within 60 days after the expiration of the 60-day period for a decision by the Administrator). Thus, the PRRB decision is the subject of the Court's review.

*Id.* ¶ 99. The complaint seeks the same relief plaintiffs sought from the Administrator in their letter to the Office of the Attorney Advisor: reversal of the part of the PRRB's decision that affirmed the contractor's denials of bad debt claims by providers in certain states. *See id.* ¶ 9.[4]

On August 29, 2019, the Administrator issued a decision "vacat[ing]" the PRRB's June 2019 decision and "remand[ing] for further development of the record" on several issues, including "out-of-state claims and also for the enrollment status of LTCHs in States where the Providers claim they were not allowed to enroll, and any other matters that advance the understa[nd]ing of the issues in this case." CMS Decision at 28.

## II.     LEGAL STANDARD

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Indeed, federal courts are "forbidden . . . from acting beyond our authority," *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), and, therefore, have "an affirmative obligation 'to consider whether the constitutional and statutory authority exist for us to hear each dispute,'" *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996) (quoting *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 196 (D.C. Cir. 1992)). Absent subject matter jurisdiction over a case, the court must dismiss it. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006); FED. R. CIV. P.

---

[4]     Plaintiffs also allege that the PRRB erred in not "differentiat[ing] between bad debts for in-state dual eligibles versus out-of-state dual eligibles." Compl. ¶ 7.

12(h)(3). When considering a motion to dismiss under Rule 12(b)(1), a court must accept as true all uncontroverted material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

### III.   DISCUSSION

Section 1395oo(f)(1) of the Medicare statute allows judicial review only of a "final decision of the Board" or a "reversal, affirmance, or modification by the" Administrator. 42 U.S.C. § 1395oo(f)(2); *see also id.* § 405(h) (allowing judicial review only "as herein provided"); *see also id.* § 1395ii (incorporating § 405(h)). This prerequisite for judicial review requires dismissal of this action unless plaintiffs point to an agency action "sufficient to establish jurisdiction." *Athens Cmty. Hosp., Inc. v. Schweiker*, 686 F.2d 989, 993 (D.C. Cir. 1982).

Plaintiffs argue that the PRRB's decision is final because "the Administrator . . . did not reverse, affirm, or modify" it before "the 60-day statutory deadline." Pls.' Opp'n at 1 (citing 42 U.S.C. § 1395oo(f)(1)). This argument ignores other critical language in the same statutory provision. Recall that "[a] decision of the Board shall be final unless the Secretary . . . within 60 days *after the provider of services is notified of the Board's decision*, reverses, affirms, or modifies the Board's decision." 42 U.S.C. § 1395oo(f)(1) (emphasis added); *see also Whitecliff, Inc. v. Shalala*, 20 F.3d 488, 489 (D.C. Cir. 1994) ("The Board's decision is final agency action unless the Secretary, within 60 days, chooses to reverse, affirm, or modify the decision."). Working from the date they "received the PRRB's decision . . . by email," Pls.' Opp'n at 3 (citing Pls.' Opp'n, Ex. A, Email from PRRB to Jason M. Healy (June 26, 2019 at 3:03 PM), ECF No. 21-1), plaintiffs calculate that the Secretary's delegate, the Administrator, had until August 25, 2019 to review the PRRB's decision, *see* Pls.' Opp'n at 6. By contrast, defendant

insists that the Administrator had until August 30. *See* Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mem.") at 12, ECF No. 19. Plaintiffs' error, defendant says, is "fail[ing] to factor in the applicable five-day presumptive period for a provider's receipt of the decision." *Id.* at 11. As already noted, by regulation, "notice" in § 1395oo(f)(1) is "presumed to be 5 days after the date of issuance of . . . a reviewing entity document." 42 C.F.R. § 405.1801(a).

No one disputes that if the presumption applies here, then jurisdiction is lacking: Applying the presumption, the 60-day clock started on July 1, 2019 (five days after the Board's June 26 decision), the Administrator had until August 30 to act, and the Administrator's August 29 order was timely. That order vacated the PRRB's decision and remanded the matter to the PRRB, rendering the PRRB's decision not final and not reviewable.[5] Plaintiffs thus attack the presumption, arguing first that the regulation is invalid and second that, if valid, the regulation does not apply. *See* Pls.' Opp'n at 9–17.

In the end, the regulation is both valid and applicable. As a result, plaintiffs "may not invoke the jurisdiction of the Court at this time and must instead wait for the ongoing administrative process to yield a final judicially-reviewable decision." *Jordan Hosp.*, 571 F. Supp. 2d at 114 (holding that jurisdiction was lacking where Administrator vacated and remanded PRRB decision and PRRB had yet to issue its next decision). These two conclusions are explained below.

---

[5]    The Administrator's August 29, 2019 order cannot be the basis for jurisdiction. Section 1395oo(f)(1) allows review only of a "reversal, affirmance, or modification by the" Administrator. 42 U.S.C. § 1395oo(f)(1). Consistent with this text, which does not include vacatur and remand, courts have concluded that "an order for remand" by the Administrator "is not a final agency action subject to review" under the Medicare statute. *Jordan Hosp. v. Leavitt*, 571 F. Supp. 2d 108, 114 (D.D.C. 2008) (internal quotation marks omitted); *cf. Pueblo of Sandia v. Babbitt*, 231 F.3d 878, 880 (D.C. Cir. 2000) ("It is well settled that, as a general rule, a district court order remanding a case to an agency for significant further proceedings is not final."). The agency's regulations espouse the same principle: "A decision by the Administrator remanding a matter to the Board for further proceedings . . . is not a final decision for purposes of judicial review." 42 C.F.R. § 405.1875(e)(4)(iii); *see also Goleta Valley Cmty. v. Leavitt*, 2006 WL 4050410, at *6 (D.D.C. Dec. 21, 2006) (observing that, in a 1983 rulemaking, the agency rejected an alternative: subjecting remands to limited judicial review).

### A. The Regulation is Valid

"Congress vested in the Secretary large rulemaking authority to administer the Medicare program." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 156 (2013); *see also* 42 U.S.C. § 1302(a) ("[T]he Secretary of Health and Human Services . . . shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which . . . [he] is charged under this chapter."); *id.* § 1395hh(a)(1) ("The Secretary shall prescribe such regulations as may be necessary to carry out the administration of the insurance programs under this subchapter."). Relying on that authority, the Secretary promulgated the regulation at issue after notice and comment rulemaking. *See* Final Rule, 73 Fed. Reg. 30190, 30193 (May 23, 2008). This Court therefore "lacks authority to" reject the regulation "unless . . . 'arbitrary, capricious, or manifestly contrary to the statute.'" *Sebelius*, 568 U.S. at 157 (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984)).

To plaintiffs, the statutory phrase "60 days after the provider of services is notified of the Board's decision," 42 U.S.C. § 1395oo(f)(1), unambiguously means 60 days after the provider gets "actual notice," so that the regulation's five-day presumption conflicts with "the clear statutory text," Pls.' Opp'n at 10. Plaintiffs claim that *Sun Towers, Inc. v. Heckler*, 725 F.2d 315 (5th Cir. 1984) endorses their view. *See* Pls.' Opp'n at 10. That case, from a quarter-century before the regulation, rejected the providers' argument "that the 60-day statutory period . . . begins to run from the date the Board's decision is rendered and mailed to the parties" and endorsed the Secretary's view that a decision issued 59 days after providers received a copy of the Board's decision by mail was timely. *Sun Towers*, 725 F. 2d at 319; *see also id.* at 324. *Sun Towers* did not purport to adopt the conclusion urged by plaintiffs here, namely: that the *only* reasonable way to read "is notified" in § 1395oo(f)(1) is "actual notice." Instead, the Fifth

8

Circuit, applying a pre-*Chevron* deference framework, endorsed the Secretary's position in part because there was "no compelling precedent or reason tending to support an opposite view." *Id.* at 324 (footnotes omitted); *see also id.* ("It is established that interpretations of a statute by the agency charged with its administration should weigh heavily absent a compelling reason to the contrary.").

Nor does *Sun Towers*' reasoning — based on the plain text and the legislative history — compel the conclusion that "is notified" must mean "actual notice." On the statutory text, *Sun Towers* remarked: "Arguably, the common understanding of 'is notified' is that of actual notice . . . ." *Id.* at 320. Yet the term notice is "capable of many meanings" other than actual notice. *Appalachian Power Co. v. EPA.*, 135 F.3d 791, 800 (D.C. Cir. 1998) (deeming a statutory term "of many meanings" ambiguous under *Chevron*). Indeed, BLACK'S LAW DICTIONARY identifies at least 10 forms of notice, including actual, imputed, inquiry, public, and constructive. *Notice*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also, e.g.*, *Momenian v. Davidson*, 878 F.3d 381, 388 (D.C. Cir. 2017) (defining "inquiry notice"); *Microwave Commc'ns, Inc. v. FCC*, 515 F.2d 385, 397 (D.C. Cir. 1974) (interpreting the statutory term "public notice").

On the legislative history, *Sun Towers* relayed that the House of Representatives Committee Report accompanying the legislation enacting § 1395oo(f)(1) "interpreted the 'is notified' language of the secretarial review provision to mean that 'the Board's decision shall be final unless reversed or modified . . . within 60 days after the provider *receives* notification of the Board's decision.'" *Id.* at 320 (alteration and emphasis in original) (quoting H. Rep. No. 92–231, *as reprinted in* 1972 U.S.C.C.A.N. 4989, 5309). Setting aside the question whether a Committee Report can ever render statutory language clear at *Chevron*'s initial step, this Committee statement does not help plaintiffs because the phrases "receives notification" and "is

9

notified" can both bear multiple meanings. At bottom, because notification, like notice, can take many forms, the agency has room to do what it did here — adopt a more precise definition of notice.

In the end, the regulation's definition of "notice" controls because it reasonably implements the statute. *See Sebelius*, 568 U.S. at 158 ("A court must uphold the Secretary's judgment as long as it is a permissible construction of the statute, even if it differs from how the court would have interpreted the statute in the absence of an agency regulation."). Again, the regulation defines the terms "date of receipt" and "notice" as "synonymous" and states: "The date of receipt by a party . . . of documents involved in proceedings before a reviewing entity is presumed to be 5 days after the date of issuance of . . . a reviewing entity document." 42 C.F.R. § 405.1801(a). The "presumption, which is otherwise conclusive, may be overcome if it is established by a preponderance of the evidence that such materials were actually received on a later date." *Id.* This regulation chose a hybrid of constructive and actual notice. The constructive piece is that "notice [is] presumed by law to have been acquired by a person and thus imputed to that person" five days after the decision is issued. *Notice*, BLACK'S LAW DICTIONARY (11th ed., 2019) (defining "constructive notice"). Actual notice is reflected first in how the presumption's length is "the period typically necessary for receipt of first class, United States mail." Proposed Rule, 69 Fed. Reg. 35716, 35719 (June 25, 2004). Second, the ability to rebut the presumption is an actual-notice rule. As the multifarious definitions of "notice" show, the concept of notice is capacious enough to encompass both actual and legal-fictional ways to be notified. The regulation's definition therefore reasonably implements the text of the statute.

The definition is also sensible on a practical level. *Sun Towers* helps to show why. In that case, differing understandings of the meaning of notice led to litigation, all the way up to the

court of appeals, over the finality of the agency's action. The regulation avoids such disputes by clarifying the meaning of "is notified." As CMS explained during rulemaking, some uniform definition is "need[ed] to dispel potential confusion" about when the review period begins to run. 69 Fed. Reg. at 35719. Using a presumption further "avoid[s] any problem of verifying when a document or other material is actually received," a burden on parties and courts. *Id.* Lastly, allowing that presumption to be rebutted in some circumstances "provides an adequate means for a provider . . . to establish that it actually received a document or other material on a later date." *Id.*

### B. The Presumption Applies

Plaintiffs raise several other objections to the presumption's application here: first, that the regulation is defunct in the email era; second, that CMS failed to tell them about the presumption; and third, that they will be prejudiced by the presumption's application. None of these objections is persuasive.

Starting with the first, plaintiffs view the regulation as an anachronism. As noted, CMS chose a five-day presumption to "ensure enough time for the period typically necessary for receipt of first class, United States mail." 69 Fed. Reg. at 35719. At the time, CMS's practice was to mail PRRB decisions to the parties. *See* Pls.' Opp'n at 11; Def.'s Reply to Pls.' Opp'n to Def.'s Mot. to Dismiss ("Def.'s Reply") at 6, ECF No. 22. Since August 2018, plaintiffs point out, the PRRB has "issue[d] its correspondence via email to the parties of an appeal." Pls.' Opp'n at 12 (quoting PRRB Rule 2.2.2, https://www.cms.gov/Regulations-and-Guidance/Review-Boards/PRRBReview/Downloads/PRRB-Rules-August-29-2018.pdf (Aug. 29, 2018)). Times may have changed, but courts cannot simply cast aside otherwise valid agency regulations for outdatedness. Plaintiffs' opinions about how to update the regulation are

better directed to the agency. In any event, the regulation remains sensible in an email age: the presumption still obviates the need for fact-finding about when each provider got the PRRB decision by email.

At times, plaintiffs frame this first argument as a question of whether to defer to the agency's interpretation of its regulation. *See* Pls.' Opp'n at 17 (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415–16 (2019)). According to plaintiffs, whether the regulation "should apply to email notice" is ambiguous, and "the agency's interpretation that a five-day presumption should apply to email notice is plainly unreasonable." *Id*. The regulation, though, is crystal clear: the conclusive presumption applies to "receipt by a party" of any "documents involved in proceedings before a reviewing entity." 42 C.F.R. § 405.1801(a). As a result, "[t]he regulation then just means what it means — and the court must give it effect, as the court would any law." *Kisor*, 139 S. Ct. at 2415.

Second, plaintiffs maintain that they were ignorant of the regulation.[6] They first note that "[t]he notice of review the Administrator sent to Plaintiffs by email on July 26, 2019 only states that 'Administrator's decisions must be rendered within 60 days after the Provider has received the Board's decision.' This notice contains no mention of a five-day presumption." Pls.' Opp'n at 14 (quoting Pls.' Opp'n, Ex. E, Letter from Office of the Attorney Advisor, CMS, to Jason P. Healy (July 26, 2019), ECF No. 21-5). They next observe that "the five-day presumption is not

---

[6] Plaintiffs also claim that "a regulated party must look to the preamble in the 2004 proposed rule to even know that the agency intends to apply the five-day rule for its own benefit." Pls.' Opp'n at 15. The text of the regulation, as just stated, contains everything a party needs to understand the presumption's application, including that the presumption is rebuttable only if the materials were received later. *See* 42 C.F.R. § 405.1801(a). The proposed rule merely makes clear why that is: "[I]n order to ensure compliance with the 60-day period for Administrator review of a Board decision . . ., the Administrator must know in advance that the review period commences no earlier than a date certain." 69 Fed. Reg. at 35719. Thus, "[w]e believe it is reasonable," the agency continued, "to permit a provider to establish actual receipt of a Board decision after the presumed 5-day period ends, because the Administrator would still be able to render a timely decision." *Id.* On the other hand, CMS noted, "if we permit the provider to establish actual receipt before the presumed 5-day period ends, the Administrator might not have enough remaining time to meet the 60-day deadline." *Id.* at 35719–20.

12

in the agency's appeal regulation governing CMS Administrator decisions at 42 C.F.R. § 405.1875.  It is found in the general definitions in the introductory section of this subpart." Pls.' Opp'n at 11.  To be sure, the notice of review could be clearer, and the appeal regulation lacks what could be a helpful cross-reference.  Nevertheless, ignorance of a public, validly promulgated legal rule is no excuse.  *Cf. United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558, 563 (1971) ("The principle that ignorance of the law is no defense applies whether the law be a statute or a duly promulgated and published regulation.").  That aphorism is especially apt where, as here, "[p]laintiffs and their counsel are sophisticated entities, well-versed in the administrative rules inherent in the Medicare appeals process," Def.'s Reply at 10, and well-equipped to navigate to the general definitions section of the CMS regulations.

Finally, plaintiffs claim that dismissal will unfairly prejudice them.  *See* Pls.' Opp'n at 18.  In their view, remand to the PRRB is "unnecessary" because this Court's recent decision in *Select Specialty Hosp.—Denver, Inc. v. Azar* entitles them to relief.  Pls.' Opp'n at 18.  Remand is essential, not futile, to resolution of this case, however.  How *Select Specialty Hosp.—Denver, Inc.*, which held that CMS could not apply the must-bill policies at issue here to certain non-Medicaid participating providers without going through notice-and-comment procedures, applies to this case depends in part on facts the PRRB is to develop on remand.  *See* 391 F. Supp. at 70 (summarizing the holding).  *Select Specialty Hosp.—Denver, Inc.*, drew legally significant distinctions among providers who were and were not permitted to enroll in state Medicaid programs and providers who did and did not enroll where permitted.  *Id.* at 69.  The Administrator's remand order instructed PRRB to "further develop[] . . . the record" on related issues, including "the enrollment status of LTCHs in States where the Providers claim they were

not allowed to enroll." CMS Decision at 28. Review in this Court before the PRRB has a chance to finalize its work is not an option.

## IV. CONCLUSION

For the reasons stated, the defendant's motion to dismiss for lack of subject matter jurisdiction is granted.

Date:  May 26, 2020

_____
BERYL A. HOWELL
Chief Judge